ALEXANDER E. EISEMANN (admitted Pro Hac Vice)
20 Vesey Street, Suite 400
New York, New York 10007
Telephone: 212.420.8300
Facsimile: 212.420.8338
aee@eislaw.com

Michael J. Jaurigue (SBN 208123)
S. Sean Shahabi (SBN 204710)
Alexander K. Spellman (SBN 250398)
JAURIGUE LAW GROUP
300 W Glenoaks Blvd, Ste 300
Glendale, California 91202
Telephone: 818.630.7280
Facsimile: 888.879.1697
michael@jlglawyers.com
sean@jlglawyers.com
alexander@jlglawyers.com
service@jlglawyers.com

*Attorneys for Plaintiff*
*Mod Champagne, LLC*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MOD CHAMPAGNE LLC,<br><br>Plaintiff,<br><br>v.<br><br>RETAIL SERVICES SYSTEMS, INC. (D/B/A TOTAL WINE & MORE) and BLICKER PIERCE WAGNER WINE MERCHANTS, LLC,<br><br>Defendants. | Case No. 2:21-cv-00985-JAK-AFM<br><br>*[Assigned to the Hon. John A. Kronstadt]*<br><br>**AMENDED MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANT BLICKER PIERCE WAGNER WINE MERCHANTS' MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM PURSUANT TO FED. R. CIV. P 12(B)(6)**<br><br>Complaint filed; February 2, 2021<br>Motions filed: April 1, 2021<br>Hearing date: November 22, 2021<br>Courtroom 10B |

1

**DEFENDANT MOD CHAMPAGNE, LLC'S, AMENDED OPPOSITION TO DEFENDANT BLICKER PIERCE WAGNER WINE MERCHANTS, LLC'S MOTION TO DISMISS, CASE NO. 2:21-CV-00985-JAK-AFM**

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ..................................................................................... 3

INTRODUCTION ..................................................................................................... 4

DISCUSSION ............................................................................................................ 4

I. THE COMPLAINT ADEQUATELY PLEADS A VIOLATION OF CAL. BUS. & PROF. CODE § 17048 ................................. 4

   A. Southern Glazer Does Not Need to be a Party to Allege a Violation of the California Unfair Practices Act Against the Defendants but Plaintiff Will be Amending the Complaint to Moot This and Other Issues ............................................... 5

   B. The Conduct Alleged in the Complaint Fits Within the Statutory Scheme .................. 5

   C. The Complaint Adequately Alleges the Requisite Collusion and Corrupt Agreements Between Southern Glazer and the Two Named Defendants ..................... 7

II. THE COMPLAINT ADEQUATELY PLEADS THE TORTIOUS INTERFERENCE CLAIM ................................................ 12

III. THE COMPLAINT ADEQUATELY PLEADS UNFAIR COMPETITION AGAINST BPW ................................................. 14

IV. THE COMPLAINT ADEQUATELY PLEADS A CIVIL CONSPIRACY AND LIABILITY FOR AIDING AND ABETTING ......................... 15

CONCLUSION ........................................................................................................ 20

DEFENDANT MOD CHAMPAGNE, LLC'S, AMENDED OPPOSITION TO DEFENDANT BLICKER PIERCE WAGNER WINE MERCHANTS, LLC'S MOTION TO DISMISS, CASE NO. 2:21-CV-00985-JAK-AFM

# TABLE OF AUTHORITIES

## CASES

ABC Int'l Traders, Inc. v. Matsushita Elec. Corp., 14 Cal. 4th 1247,
    931 P.2d 290 (1997)..................................................................................5, 6, 7

Eddins v. Redstone, 134 Cal. App. 4th 290, 309 35 Cal. Rptr. 3d 863 (2005) .................7, 11

Harris v. Capitol Records Distrib. Corp., 64 Cal. 2d 454, 461 (1966)...................................5

I–CA Enterprises, Inc. v. Palram Americas, Inc., 235 Cal. App. 4th 257,
    185 Cal. Rptr. 3d 24 (2015)....................................................................................16

IIG Wireless, Inc. v. Yi, 22 Cal. App. 5th 630 (2018) ............................................................17

In re Arizona Theranos, Inc., Litig., 256 F. Supp. 3d 1009 (D. Ariz. 2017), on reconsideration
    in part, No. 2:16-CV-2138-HRH, 2017 WL 4337340 (D. Ariz. Sept. 29, 2017...................16

Korea Supply Co. v. Lockheed Martin Corp., 29 Cal.4th 1134 (Cal. 2003)..........................13

Les Shockley Racing, Inc. v. National Hot Rod Ass'n, 884 F.2d 504 (9th Cir. 1989) .......16, 18

Oltz v. St. Peter's Community Hospital, 861 F.2d 1440 (9th Cir. 1988)............................18, 19

People v. Thomas Shelton Powers, M.D., Inc., 2 Cal. App. 4th 330, 3 Cal. Rptr. 2d 34
    (1992), reh'g denied and opinion modified (Feb. 3, 1992), and abrogated by Kraus v.
    Trinity Mgmt. Servs., Inc., 23 Cal. 4th 116, 999 P.2d 718 (2000))......................................6

Western Reserve Oil Gas Co. v. New, 765 F.2d 1428 (9th Cir. 1985), cert. denied, 474 U.S.
    1056, 106 S. Ct. 795 (1986) ..................................................................................16

## OTHER AUTHORITIES

6 Areeda, Antitrust Law, ch. 14, ¶ 1434c2........................................................................11

California Unfair Practices Act, Cal. Bus. & Prof. Code § 17000, et seq..............................4

Sherman Antitrust Act of 1890, 15 U.S.C. §§ 1-38 ........................................................18, 19

**DEFENDANT MOD CHAMPAGNE, LLC'S, AMENDED OPPOSITION TO DEFENDANT BLICKER PIERCE WAGNER WINE MERCHANTS, LLC'S MOTION TO DISMISS, CASE NO. 2:21-CV-00985-JAK-AFM**

# INTRODUCTION

The facts and procedural history relevant to plaintiff's opposition to the motion to dismiss filed by defendant Blicker Pierce Wagner Wine Merchants, LLC ("BPW"), are set forth in the accompanying memorandum of law in opposition to the motion dismiss filed by Retail Services Systems, Inc., d/b/a Total Wine & More ("Total Wine") and need not be repeated here. Instead, plaintiff respectfully refers the Court to its response to that motion.

# DISCUSSION

## I.

## THE COMPLAINT ADEQUATELY PLEADS A VIOLATION OF CAL. BUS. & PROF. CODE § 17048

BPW claims that plaintiff's third cause of action (Violation of California Unfair Practices Act, Cal. Bus. & Prof. Code § 17000, et seq.) should be dismissed because the complaint has does not allege that Southern Glazer itself violated § 17043 and, accordingly, that neither BPW nor Total Wine can be alleged to have colluded with it for violating that provision. BPW Mot. at 6. It also notes that the complaint does not plead a collusion claim independent of any allegations against Southern Glazer. Id. BPW also notes that while the complaint alleges that it and Total Wine were engaged in business within California, it does not allege that Southern Glazer was. BPW Mot. at 7. Finally, BPW claims that the complaint did not "allege, in other than conclusionary terms, the defendant's sale price, [and] costs in the product." Id.

    A.    <u>Southern Glazer Does Not Need to be a Party to Allege a Violation of the California Unfair Practices Act Against the Defendants but Plaintiff Will be Amending the Complaint to Moot This and Other Issues</u>

Plaintiff disagree with the implied notion that to charge one actor with colluding with another, it is necessary to include both actors as defendants in a civil lawsuit. That is often impossible, as in the cases defendants discuss in their motion to dismiss based on the absence of Southern Glazer and it is routine in civil cases. It also parallels the routine naming of unindicted co-conspirators in criminal indictments. Plaintiff also disagrees that more specificity on the pricing involved was necessary. Rather than argue over these points, however, the proposed amended complaint will include all of these "missing" allegations, including impleading Southern Glazer a defendant. If leave to amend is granted, it will moot these issues.

    B.    <u>The Conduct Alleged in the Complaint Fits Within the Statutory Scheme</u>

BPW goes on to argue, in addition, that the California statutes were not intended to reach conduct such as that alleged in the complaint on the theory that to be actionable under the statutory scheme, the bad actor's conduct must injure its own competition. Quoting from <u>Harris v. Capitol Records Distrib. Corp.</u>, 64 Cal. 2d 454, 461 (1966), BPW notes that in that case "the California Supreme Court explained that '[t]hroughout the Act the Legislature has manifested its intent to discourage practices which injure the *seller's* competitors.'" BPW Mot. at 7 (italics added by Blicker Pierce).

Yet, in <u>ABC Int'l Traders, Inc. v. Matsushita Elec. Corp.</u>, 14 Cal. 4th 1247, 1265, 931 P.2d 290, 300 (1997), the Court called its own language in the <u>Harris</u> opinion "dictum," with "no binding precedential effect," <u>id</u>., and held that a distributor's discriminatory practices between buyers below it is actionable under the unfair-competition statutory

5

**DEFENDANT MOD CHAMPAGNE, LLC'S, AMENDED OPPOSITION TO DEFENDANT BLICKER PIERCE WAGNER WINE MERCHANTS, LLC'S MOTION TO DISMISS, CASE NO. 2:21-CV-00985-JAK-AFM**

1. scheme. Id., 14 Cal. 4th at 11265, 931 P.2d at 300; see id., 14 Cal. 4th at 1271, 931 P.2d at 304 (Mosk, J., concurring) (the statute "implicitly defines 'unfair competition' as secret discrimination by a seller between or among its buyers. It similarly defines 'injury to a competitor' as harm to a competitor of either the seller or a favored buyer.").

The Court took an expansive view of the statutory scheme in ABC Int'l Traders and plaintiff respectfully submits that any new arguments that BPW may raise in its reply now should be considered in light of the overall goal expressed by the Court of remedying all types of anti-competitive conduct. As it explained in ABC Int'l Traders, "it is unlikely the Legislature, in providing courts with broad equitable powers to remedy violations under section 17203, intended those powers be limited in an illogical, unfair and counterproductive manner." Id., 14 Cal. 4th at 1270, 931 P.2d at 304; see id., 14 Cal. 4th at 1267, 931 P.2d at 302 (noting "it is perhaps sufficient to observe that none of these precepts are reflected in the language, stated purposes, or history of the UPA. Section 17045 requires proof of injury to, and a tendency to destroy, 'competition,' not 'interbrand competition.'"); see also id., 14 Cal. 4th at 1247, 931 P.2d at 304 ("'[T]he laws against unfair business practices were drafted in large part to prevent a wrongdoer from retaining the benefits of its illegal acts. That purpose would be frustrated if a party were entitled to retain its profits simply because it is difficult to specify the victim.' Simply stated, 'the necessity for deterring future acts require[s] that the wrongdoer be prevented from retaining the illegal profits.'" (quoting People v. Thomas Shelton Powers, M.D., Inc., 2 Cal. App. 4th 330, 341–342, 343, 3 Cal. Rptr. 2d 34 (1992), reh'g denied and opinion modified (Feb. 3, 1992), and abrogated by Kraus v. Trinity Mgmt. Servs., Inc., 23 Cal. 4th 116, 999 P.2d 718 (2000)).

The alleged conduct of Southern Glazer and the other two defendants in this instance involved that goal of destroying Mod to help Mod's competitors (some of whom Southern Glazer itself distributed). See, e.g., Complaint ¶ 242(B)(x) ("Southern Glazer has engaged

6

**DEFENDANT MOD CHAMPAGNE, LLC'S, AMENDED OPPOSITION TO DEFENDANT BLICKER PIERCE WAGNER WINE MERCHANTS, LLC'S MOTION TO DISMISS, CASE NO. 2:21-CV-00985-JAK-AFM**

in a conspiracy to eliminate competition in the Relevant Market through the wrongful destruction of Mod Sélection as a going concern, and <u>combined and conspired with Mod Sélection's competitors</u> to do so." <u>Id</u>. (emphasis added).  That is the type of anti-competitive conduct the <u>ABC Int'l Traders</u> Court determined the statutory scheme was broadly intended to address.  Accordingly, plaintiff respectfully submits, it should not take the outdated and narrow interpretation because it would undermine the broad objectives of the statutory scheme.

        C.      The Complaint Adequately Alleges the Requisite Collusion and Corrupt Agreements Between Southern Glazer and the Two Named Defendants

"Regardless of Mod's claim against Southern Glazer, " BPW argues, "Mod has not—and cannot—allege that either defendant 'participate[d] or collude[d]' with Southern Glazer . . . ."  BPW Mot. at 8.  Noting that "[i]t is not unlawful to buy goods at a bargain price," <u>id.</u>, BPW argues that "to plead a claim under this provision, Mod must allege facts that, if proven, would show that neither Defendant simply engaged in 'the rational reaction of a business actor' by purchasing the champagne Southern Glazer offered," <u>id</u>.  "In other words," BPW concludes, "Mod's allegations do not raise a plausible inference of collusion if the Defendants' conduct is equally consistent with their independent self-interest," <u>id</u>. "[T]he allegations must indicate , BPW reasons, "'that the defendants acted in contradiction of their economic interests." <u>Id</u>. (quoting <u>Eddins v. Redstone</u>, 134 Cal. App. 4th 290, 309, 35 Cal. Rptr. 3d 863 (2005)).  It concludes by arguing that "Mod's bare-bones allegations of collusion do not plead conduct that is inconsistent with permissible competitive behavior." <u>Id</u>.

As noted in the introduction of plaintiff's opposition to Total Wine's motion to dismiss, "as in the criminal context, conspirators in the civil context don't advertise their corrupt agreements to the outside world."  Plaintiff's Opposition to Motion to Dismiss filed

7

**DEFENDANT MOD CHAMPAGNE, LLC'S, AMENDED OPPOSITION TO DEFENDANT BLICKER PIERCE WAGNER WINE MERCHANTS, LLC'S MOTION TO DISMISS, CASE NO. 2:21-CV-00985-JAK-AFM**

by Total Wine, dated September 1, 2021, at 7 ("Plaintiff's Opp. to Total Wine Mot."). The cases cited above by BPW make sense when a plaintiff can allege nothing more than routine business behavior. If all BPW and Total Wine had done was buy and then resell Mod's product at low prices, they would be worth considering. But the complaint here alleged far more.

First, there are specific facts that plaintiff submits either evince the corrupt agreements BPW and Total Wine had with Southern Glazer or, at best, demonstrate that they knew--not just that they should have known, for example--that they were assisting in its corrupt plan to destroy Mod as a brand. For example, the complaint alleges:

> BPW assisted Southern Glazer's scheme by purchasing an astounding quantity of Mod Sélection champagnes on one day, December 2, 2020 (the first and only time the company purchased Mod Sélection champagnes), and then sold it through their various websites and auction houses at bargain-basement prices (as little as $50) at the commencement of the 2020-2021 holiday season—just in time to inflict maximum damage to the brand. Like Total Wine, BPW is an experienced and sophisticated industry participant and knew full well that Southern Glazer was not authorized to sell Mod Sélection champagnes at all, let alone at heavily- discounted prices.

Complaint ¶ 8.

Similarly, it alleges about Total Wine:

> Total Wine knew the authorized pricing of Mod Sélection champagnes, as it had bought them at or very near full price shortly before the December 2020 ambush.
>
> As a sophisticated industry participant, Total Wine knew that Southern Glazer's sales of Mod Sélection champagnes at heavily-discounted prices were not authorized. Total Wine knew from its large-scale retailing experience and from its own history of selling Mod Sélection champagnes at prices at or near MSRP that the heavily-discounted prices it came to charge reflected neither the

8

**DEFENDANT MOD CHAMPAGNE, LLC'S, AMENDED OPPOSITION TO DEFENDANT BLICKER PIERCE WAGNER WINE MERCHANTS, LLC'S MOTION TO DISMISS, CASE NO. 2:21-CV-00985-JAK-AFM**

> market value of the product nor the brand strategy that would have attended a premium champagne. Total Wine knew that Mod Sélection would not have authorized and did not authorize such bargain-bin treatment of Mod Sélection champagnes.

Id. ¶ 79(I)-(J).

In addition to pleading knowledge and intent on behalf of both defendants, the complaint also alleges flagrantly-false statements promulgated by Total Wine:

> For example, defendant Retail Services Systems, Inc., d/b/a Total Wine & More ("Total Wine"), had no relationship whatsoever with Mod and no right to sell its product in its stores. Yet, it falsely told its customers that it was one of its favored retail outlets. It stated in its advertising that it had formed a "close" and "special" relationship with Mod through its Winery Direct program that gave it special direct pricing it was passing on to its customers. It also falsely and fraudulently informed customers that the Mod Sélection champagnes brand had launched in the United States on December 26, 2020, when it had actually launched a year earlier.

Plaintiff's Opp. to Total Wine Mot. at 5.

Plaintiff followed that description of Total Wine's lies with the observation that "[t]hese 'literally false' statements are classic, actionable violations of trademark laws." Id. They are also powerful evidence that Total Wine knew Southern Glazer had no authorization or right to sell Mod's products to it. Why else would it claim, falsely, to have a direct relationship with Mod, when it did not?

As with Total Wine's effort to pass its other representations off as nothing more than innocent "puffery," Total Wine Mot. at 17 n.10, BPW's effort to suggest that the facts established it engaged in nothing beyond ordinary commerce suffers from equally unpersuasive cherry picking. See Plaintiff's Opp. to Total Wine Mot. at 20 n.6. BPW didn't just buy product and resell it at a profit. It did so by making a highly-suspicious purchase, for the first time, of "an astounding quantity of Mod Sélection champagnes on

9

**DEFENDANT MOD CHAMPAGNE, LLC'S, AMENDED OPPOSITION TO DEFENDANT BLICKER PIERCE WAGNER WINE MERCHANTS, LLC'S MOTION TO DISMISS, CASE NO. 2:21-CV-00985-JAK-AFM**

one day, December 2, 2020," Complaint ¶ 8, and then dumping it all in just a few days or weeks. Total Wine also didn't just buy and sell the product either. It took on "an unusual, enormous quantity of Mod Sélection champagnes just before the critical Christmas-through-Valentine's-Day champagne season a lot of product at a ridiculously low price, then lied to its customers about where it got it." Complaint ¶ 5. These facts, pleaded with specificity, take this case out of the generality of those cases in which courts have needed to consider innocent explanations for a defendant's conduct.

The complaint not only alleged this conduct, which provided a compelling basis upon which to infer that BPW and Total Wine participated in or colluded with Southern Glazer's to carry out its unlawful plan, it also specifically alleged that the two defendants agreed to help Southern Glazer achieve the unlawful objects of its plan. See, e.g., Complaint ¶ 2 ("Over the December 2020 and January 2021 holidays, Southern Glazer executed a predetermined plan to kill the Mod Sélection champagnes brand by dumping the product at brand-damaging discounted prices in the U.S. and abroad.);[1] id. ¶ 242 ("Total Wine and BPW entered into an illegal agreement with Southern Glazer" [to commit the various causes of action set forth in the complaint, including to "violate the California Unfair Competition Law," to "violate the California Unfair Practices Act" and to "engage in unfair competition against Mod Sélection"); id. ¶ 82 ("BPW's behavior can only be explained as collusion with Southern Glazer in an effort to destroy the Mod Sélection champagnes brand."); id. ¶ 51 ("on the eve of Christmas and New Year's, Southern Glazer executed its strategy designed to deliberately kill Mod Sélection and the Mod Sélection champagnes brand, trademarks, and goodwill by dumping most of the 4,000 cases it purchased as a "non-cancelable" order"); id. ¶ 79.G ("Southern Glazer and Total Wine are each the largest customers of the other. In the beverage alcohol industry, this dynamic . . . routinely results in favors and

---

[1] The amended complaint will amplify this allegation about Southern Glazer with more specificity. See Plaintiff's Opp. to Total Wine Mot. to Dismiss at 8 n.3.

**DEFENDANT MOD CHAMPAGNE, LLC'S, AMENDED OPPOSITION TO DEFENDANT BLICKER PIERCE WAGNER WINE MERCHANTS, LLC'S MOTION TO DISMISS, CASE NO. 2:21-CV-00985-JAK-AFM**

other concessions. It is highly likely that Total Wine agreed to collaborate with Southern Glazer in exchange for favorable consideration on other brand purchases from Southern Glazer, which is a giant among wine and spirits distributors and possesses enormous leverage over retailers."); id. ¶ 243 ("Total Wine committed numerous overt acts in furtherance of its conspiratorial agreement with Southern Glazer"); id. ¶ 244 ("BPW committed numerous overt acts in furtherance of its conspiratorial agreement with Southern Glazer"); id. ¶ 245 ("Total Wine and BPW intentionally took these and other overt acts described above to further the corrupt agreement between and among them and Southern Glazer and to carry out a common plan against Plaintiff."); id. ¶.[2]

BPW's effort to negate the facts suggesting it was fully aware of Southern Glazer's plan would require the Court to turn a blind eye to what the facts themselves suggest. Returning to the criminal law for an analogy, if someone is buying a brand new flat-screen television, unopened in its original packaging from the trunk of someone's car, if the buyer is asked for only $50 when the set normally retails for thousands more, it is fair to infer that the buyer believed it was stolen property.

---

[2] BPW's citation to isolated language in Eddins v. Redstone, 134 Cal. App. 4th 290, 314, 35 Cal. Rptr. 3d 863, 884 (2005), an antitrust case examining a "conscious parallelism" claim about setting high prices, adds nothing to the analysis here. If a company is going to be held liable for raising its price, it is reasonable to factor in whether it would, absent a price-fixing agreement, make economic sense to raise its prices above what supply and demand would otherwise suggest. See id. ("[o]ne prominent 'plus factor,' to which antitrust plaintiffs often take recourse, is a showing that the defendants' behavior would not be reasonable or explicable (i.e. not in their legitimate economic self-interest) if they were not conspiring to fix prices or otherwise restrain trade"); id. ("Other courts likewise consider motive in tandem with actions contrary to a defendant's economic interest," with similar tests, such a one that provides "before an inference of conspiracy may be drawn, plaintiff must also show defendants acted in contradiction of their economic interests and had a motive to enter into an agreement." (emphasis added)); id. ("no conspiracy should be inferred from ambiguous evidence or from mere parallelism when the defendants have no incentive to conspire") (quoting 6 Areeda, Antitrust Law, ch. 14, ¶ 1434c2).

**DEFENDANT MOD CHAMPAGNE, LLC'S, AMENDED OPPOSITION TO DEFENDANT BLICKER PIERCE WAGNER WINE MERCHANTS, LLC'S MOTION TO DISMISS, CASE NO. 2:21-CV-00985-JAK-AFM**

The defendants may argue that their facts--being offered a luxury champagne for $50 a bottle that was still being sold to others for $100 to $150 more--are distinguishable but that is a question of fact.  Mod will argue that the circumstances alleged in the complaint made clear that Southern Glazer was intentionally dumping the product to hurt Mod's brand.  Mod submits that the too-good-to-be-true aspect of the pricing, along with the defendants' experience in the industry (including with the well-known brand-killing techniques of distributors) is a reasonable basis upon which to infer that the two defendants knew they were assisting Southern Glazer in achieving the unlawful objective of the parties' conspiracy.

At the very least, Mod respectfully submits that it is enough to warrant discovery, during which its counsel will explore the state of mind of the retailer defendants' representatives who purchased and resold the product at fire-sale prices.  Given that, it further submits, dismissal based on this thinly-disguised counter-factual argument of good faith by the retailing defendants is not warranted.  The case should proceed to discovery based on the facts and factual conclusions already alleged in good faith, and with solid evidentiary support, in the complaint.

II.

## THE COMPLAINT ADEQUATELY PLEADS THE TORTIOUS INTERFERENCE CLAIM

As in its other efforts to challenge the complaint, BPW has a laundry list of reasons why the tortious-interference claims are insufficient.  Yet, most of them don't hold up to simply scrutiny.

First, BPW contends that there was no reason pleaded other than "prospective advantage" but the complaint specifically alleges that it was Southern Glazer's goal to kill Mod as a brand, in part to help its other brands but also in part out of retaliation for what the complaint alleges were strong and, Mod agrees, unfair criticism of its motives.  Unfair or

12

DEFENDANT MOD CHAMPAGNE, LLC'S, AMENDED OPPOSITION TO DEFENDANT BLICKER PIERCE WAGNER WINE MERCHANTS, LLC'S MOTION TO DISMISS, CASE NO. 2:21-CV-00985-JAK-AFM

not, Southern Glazer's retaliation to destroy Mod and Drake's brand was independently unlawful.

As far as a relationship with third parties, Mod had many existing customers who had purchased its product at full price, $100 to $150 more per bottle than what Southern Glazer was dumping it at with the help of BPW and Total Wine. Those relationships were harmed because the other retailers were stuck with product they couldn't sell for more than they bought it for and that meant they weren't going to buy more, ultimately to Mod's economic disadvantage. Southern and the two defendants knew this would happen if they flooded the market with slashed-prices bottles and that it would negatively impact on Mod's relationship with these other retailers.

Even assuming, <u>arguendo</u>, that neither defendant specifically intended to damage Mod's relationship with the other retailers or Drake, tortious-interference claims can lie where it is only the <u>impact</u> of unlawful conduct that negatively affects a business opportunity. As the California Supreme Court noted in <u>Korea Supply Co. v. Lockheed Martin Corp.</u>, 29 Cal.4th 1134 (Cal. 2003), a case relied upon by BPW:

> [W]e find no sound reason for requiring that a defendant's wrongful actions must be directed towards the plaintiff seeking to recover for this tort. The interfering party is liable to the interfered-with party "when the independently tortious means the interfering party uses are independently tortious *only as to a third party*. Even under these circumstances, the interfered-with party remains an intended (or at least known) victim of the interfering party--albeit one that is indirect rather than direct." In fact, "the most numerous of the tortious interference cases are those in which the disruption is caused by an act directed not at the plaintiff, but at a third person."

<u>Id.</u>, 29 Cal.4th at 1163 (italics in original) (citations omitted).

Mod believes the tortious-interference claims are adequately pleaded in the complaint but the amended complaint will include more specific detail on these allegations

13

**DEFENDANT MOD CHAMPAGNE, LLC'S, AMENDED OPPOSITION TO DEFENDANT BLICKER PIERCE WAGNER WINE MERCHANTS, LLC'S MOTION TO DISMISS, CASE NO. 2:21-CV-00985-JAK-AFM**

and so it requests the Court defer ruling on this issue until after it has had an opportunity to amend. Proximate cause is amply supported in the allegations in the complaint. It was not self-serving to say there would be other sales at the appropriate price because the complaint alleges that they had just occurred prior to the defendants' and Southern's dumping of the product at the end of 2020.

Mod believes the damage to its relationship with Drake is also adequately alleged but the amended complaint will elaborate on this as well, so it requests the Court to defer any ruling on this until after it has had an opportunity to amend. BPW's contention that there was no contract, only an understanding with him, is wide of the mark. The complaint alleges that Drake and Mod had an extensive agreement, the terms of which are confidential, but can be shared in camera and with an appropriate protective order if needed. But that shouldn't be necessary, as the complaint already recites that there was a formal contract with him. Drake's involvement with Mod was widely known in the industry and so defendants knew that damage to Mod's brand would also cause a breakdown in Mod's relationship with him.

## III.

## THE COMPLAINT ADEQUATELY PLEADS UNFAIR COMPETITION AGAINST BPW

BPW advances three arguments in claiming that the complaint hasn't pleaded a cause of action against it for unfair competition: (1) Plaintiff does not have standing to assert a claim against either of the defendants because it hasn't provided proof that Select Three, LLC, is, as claimed, the predecessor in interest to Mod Champagne, LLC, (2) that plaintiff's claims are barred by the first-sale doctrine and (3) that plaintiff rests its claims on price difference. Each of these arguments reflects the reality that the causes of action based on

**DEFENDANT MOD CHAMPAGNE, LLC'S, AMENDED OPPOSITION TO DEFENDANT BLICKER PIERCE WAGNER WINE MERCHANTS, LLC'S MOTION TO DISMISS, CASE NO. 2:21-CV-00985-JAK-AFM**

Total Wine's literally-false statements are unassailable using any real arguments, so BPW simply refers back to Total Wine's paper-thin efforts to find some way to a way to seek dismissal of them.

The first argument is easily disposed of by virtue of the fact that Select Three, LLC, and Mod Champagne, LLC, are the very same entity. The second is easily disposed of by virture of the fact that Total Wine falsely claimed it was a favored retailer of plaintiff, a recognized exception to the first-sale doctrine. The third is a straw-man argument because plaintiff does not rest on price difference to assert that the first-sale doctrine does not apply. That the defendants resort to superficial and easily addressed arguments to try to cover their bases and argue that the primary basis for federal subject-matter jurisdiction should be dismissed reveals that they have no real argument to obtain such relief.

IV.

THE COMPLAINT ADEQUATELY PLEADS A CIVIL
CONSPIRACY AND LIABILITY FOR AIDING AND ABETTING

BPW contends that the complaint doesn't adequately apprise it of the conduct in which it engaged to become a member of the alleged conspiracy and challenges the aiding-and-abetting theory on similar grounds. The complaint, however, is very specific about what it did. It would be difficult to understand, after reading the complaint and the summary of its allegations against it as set forth in Point I above, that BPW would be at a loss as to what plaintiff claims it did. Plaintiff basically claims, inter alia, that BPW made an unprecedented magnitude first buy of Mod product from Southern Glazer at fire-sale prices and sold it at equally-low prices shortly thereafter. Plaintiff has also alleged that BPW knew it was assisting Southern Glazer based on its experience in the industry, its knowledge of Mod's pricing, its familiarity with distributors' practices of "killing" brands after dropping them as

15

**DEFENDANT MOD CHAMPAGNE, LLC'S, AMENDED OPPOSITION TO DEFENDANT BLICKER PIERCE WAGNER WINE MERCHANTS, LLC'S MOTION TO DISMISS, CASE NO. 2:21-CV-00985-JAK-AFM**

suppliers, and have made a good-faith allegation that Southern Glazer likely promised BPW favorable pricing on other products if BPW helped Southern Glazer dump Mod's product in the short time BPW did.  Plaintiff will require discovery to develop the proof on that last point because conspiratorial agreements are not easily uncovered but it submits it has an ample, good-faith basis to make its allegations on this front and that they are sufficient to move this matter forward to discovery so it can prove them.

BPW's efforts to find innocent explanations for its highly unusual actions--without which Southern Glazer's plan to destroy Mod as a brand would have failed--do nothing other than flag that BPW will try to raise a material issue of fact.  Thus, its observation that BPW made a "shrewd business decision that allowed Defendants to potentially sell more champagne than competitors during its busiest season is not evidence of a conspiracy," BPW Mot. at 17, is just a thinly-disguised effort to create a dispute of fact, which has no role in the motion stage, when the allegations in the complaint must be accepted as true and viewed in their most favorable light.  Les Shockley Racing, Inc. v. National Hot Rod Ass'n, 884 F.2d 504, 507 (9th Cir. 1989); Western Reserve Oil Gas Co. v. New, 765 F.2d 1428, 1430 (9th Cir. 1985), cert. denied, 474 U.S. 1056, 106 S. Ct. 795 (1986).

"Under California law, '[t]he elements of a civil conspiracy are: (1) formation and operation of the conspiracy and (2) damage resulting to plaintiff (3) from an act done in furtherance of the common design.'"  In re Arizona Theranos, Inc., Litig., 256 F. Supp. 3d 1009, 1037 (D. Ariz. 2017), on reconsideration in part, No. 2:16-CV-2138-HRH, 2017 WL 4337340 (D. Ariz. Sept. 29, 2017 (quoting I–CA Enterprises, Inc. v. Palram Americas, Inc., 235 Cal. App. 4th 257, 185 Cal. Rptr. 3d 24, 36 n.2 (2015).  All the complaint has to establish is that BPW agreed to help Southern Glazer dump Mod champagne at fire-sale prices (which the complaint alleges it did), that it committed at least one act in furtherance of the plan (which it did by purchasing and reselling at absurdly low prices), causing damage to plaintiff (which plaintiff has explained in the complaint it did).  The rest of the detail, which BPW says

16

it cannot figure out, is in the rest of the lengthy complaint in very specific paragraphs, all of which are incorporated by reference in the actual civil-conspiracy cause of action.

Thus, BPW is fully on notice of what plaintiff says it did and the basis upon which it will seek to hold it liable. BPW can try to challenge what plaintiff will be proving but that is not something it can do at this pleading stage, where the complaint sets forth a valid cause of action and provides adequate notice of what plaintiff will be seeking to prove. BPW makes the circular argument that it and Total Wine have proven that no underlying torts will survive the motion stage, eliminating civil conspiracy as well, since it is not a valid cause of action without some other, underlying tort. If that turns out to be the case, plaintiff would agree but it submits that it has sustained its burden of demonstrating that the torts are adequately pleaded in the complaint. Assuming the Court agrees, then the entire basis for BPW's challenge to the civil conspiracy count disappears.

As far as the aiding and abetting cause of action, as BPW notes, "[l]iability may . . . be imposed on one who aids and abets the commission of an intentional tort if the person . . . knows the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other to so act." BPW Mot. at 23 (quoting IIG Wireless, Inc. v. Yi, 22 Cal. App. 5th 630, 654 (2018). As with the civil-conspiracy claim, the whole of the complaint sets out the aiding-and-abetting case against both BPW and Total Wine. Southern Glazer had a duty <u>not</u> to try to inflict economic harm on Mod by killing it as a brand by the various means alleged in the complaint. When, as the complaint alleges, each of the defendants agreed to help it accomplish that unlawful end by buying and then reselling Mod's product at absurdly low prices, each aided and abetted Southern Glazer in its commission of those torts with the substantial assistance of providing an outlet through which the discounted product could be dumped. There isn't much more that needs to be said to make clear what the complaint alleges.

17

**DEFENDANT MOD CHAMPAGNE, LLC'S, AMENDED OPPOSITION TO DEFENDANT BLICKER PIERCE WAGNER WINE MERCHANTS, LLC'S MOTION TO DISMISS, CASE NO. 2:21-CV-00985-JAK-AFM**

BPW's puzzlement about whether it is alleged to have committed a Sherman Act (15 U.S.C. §§ 1-38) violation all by itself ignores the fundamental notion of what a conspiracy is. Plaintiff hasn't alleged that either BPW or Total Wine independently violated the Sherman Act. It has alleged that Southern Glazer and each of them entered into a conspiratorial agreement under which they would assist Southern Glazer in violating it. To be liable for conspiring with Southern Glazer, the defendants simply had to be aware of Southern Glazer's anti-competitive plan and agree to commit an overt act in furtherance of it.

Plaintiff generally agrees with BPW's observation that "[s]ection one claimants must plead and prove a reduction of competition in the market in general and not mere injury to their own positions as competitors in the market . . . [and that] [r]emoval of one or a few competitors need not equate with injury to competition." BPW Mot. at 21 (quoting Les Shockley Racing, Inc. v. Nat'l Hot Rod Ass'n, 884 F.2d 504, 508 (9th Cir. 1989)) (emphasis added). "[W]hen the relevant market is both narrow and discrete and the market participants are few," id., however, "convergence of injury to a market competitor and injury to competition is possible," id. at 508-09 (citing Oltz v. St. Peter's Community Hospital, 861 F.2d 1440, 1442 (9th Cir. 1988) with this parenthetical: ("exclusion of a single nurse anesthetist was tantamount to a reduction in competition where a single hospital's service area was the relevant geographic market and the exclusion reduced the number of competing anesthesia service providers from five to four")).

"Ordinarily, whether particular concerted conduct unreasonably restrains competition is determined under a 'rule of reason' analysis, which is a case-by-case study in which 'the fact finder weighs all of the circumstances of a case.'" Oltz, 861 F.2d at 1445.[3]

---

[3] Under the "rule of reason" analysis, "[a] section one claimant must initially prove three elements: (1) an agreement or conspiracy among two or more persons or distinct business entities; (2) by which the persons or entities intend to harm or restrain competition; and (3) which actually injuries competition. After the claimant has proven that the conspiracy harmed competition, the fact finder must balance the restraint and any

**DEFENDANT MOD CHAMPAGNE, LLC'S, AMENDED OPPOSITION TO DEFENDANT BLICKER PIERCE WAGNER WINE MERCHANTS, LLC'S MOTION TO DISMISS, CASE NO. 2:21-CV-00985-JAK-AFM**

Here, the complaint alleges that there were only a handful of competitors to Mod in the highly-exclusive, luxury champagne market, including LVMH, Armand de Brignac, and Bacardi, see Complaint ¶ 242.B(iii)-(x), the type of narrow and discrete market in which elimination of a single competitor can have the requisite impact on competition. Defendants are free to challenge that rule of reason analysis but if they do that, it will be a factual dispute, the resolution of which must await the completion of discovery. Plaintiff submits that the complaint sufficiently alleges facts to explain how Southern Glazer's and defendants' conduct unreasonably restrained competition, so there is no basis to eliminate the Sherman Act violation as one of the objects of the conspiracy.[4]

      BPW's complaint that "Mod does not even plead a theory under which Defendants' conduct—giving consumers a better deal on Mod's champagne than Mod would like—harmed competition." BPW Mot. at 20. Yet that ignores one of the main thrusts of the complaint: that Southern Glazer intended to kill off Mod's brand and product, so its other products would face less competition. The complaint sets out a case that Southern Glazer and the other two defendants are giants in the wine and spirits industry. When three titans get together and agree to a plan to kill off a smaller brand that is threatening to give their other, favored brands a run for their money, that is classic anti-competitive behavior. Since that is what is pleaded in the complaint, in a market in which the elimination of even one competitor is sufficient to make out an unlawful agreement that violated the Sherman Act, BPW's arguments on this front are unavailing.

---

justifications or pro-competitive effects of the restraint in order to determine whether the restraint is unreasonable. This balancing process requires a thorough examination into all the surrounding circumstances." Oltz, 861 F.2d at 1445 (citations omitted).

[4]     Although plaintiff believes the complaint adequately pleads the Sherman Act object, since it is already seeking leave to amend the complaint, it will expand on the small-market allegations in the amended complaint and defendants will be able to renew their arguments if they believe it still falls legally short.

DEFENDANT MOD CHAMPAGNE, LLC'S, AMENDED OPPOSITION TO
DEFENDANT BLICKER PIERCE WAGNER WINE MERCHANTS, LLC'S
MOTION TO DISMISS, CASE NO. 2:21-CV-00985-JAK-AFM

## CONCLUSION

For the above reasons, defendant BPW's motion to dismiss should be denied in its entirety.

Dated:   September 3, 2021

Respectfully submitted,

/s/ Alexander E. Eisemann
ALEXANDER E. EISEMANN

*Attorney for Plaintiff Total Wine LLC*

**DEFENDANT MOD CHAMPAGNE, LLC'S, AMENDED OPPOSITION TO DEFENDANT BLICKER PIERCE WAGNER WINE MERCHANTS, LLC'S MOTION TO DISMISS, CASE NO. 2:21-CV-00985-JAK-AFM**